**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

MARITZA GASTON and GEORGE GALLART,
on behalf of themselves and all others similarly
situated,

        Plaintiffs,

        v.

VALLEY NATIONAL BANCORP and
VALLEY NATIONAL BANK

        Defendants.

Civil Action No.:  17-cv-1886

**ORAL ARGUMENT REQUESTED**

---

## DEFENDANTS' MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFFS' MOTION FOR
## CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE

---

FOX ROTHSCHILD LLP
James M. Lemonedes, Esq.
Glenn S. Grindlinger, Esq.
Keith A. Reinfeld, Esq.
101 Park Avenue, 17th Floor
New York, NY 10017
Tel:  (212) 878-7900
Fax:  (212) 692-0940

*Attorneys for Defendants*

ACTIVE\51915099.v2

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................. 1

RELEVANT BACKGROUND ............................................................................................. 3

    I.      RELEVANT FACTS ........................................................................................... 3

           A.     Valley National Bank and its Branch Service Managers ............................ 3

                 1.    Hiring of Non-Exempt Branch Staff ................................................. 5

                 2.    Monitoring and Evaluating Employee Performance ....................... 5

                 3.    Branch Employee Scheduling ......................................................... 7

           B.     The Experiences of Plaintiffs and Opt-In Plaintiff Differ .......................... 7

    II.     PROCEDURAL HISTORY ................................................................................ 12

ARGUMENT ....................................................................................................................... 14

    III.    PLAINTIFF'S MOTION FOR COLLECTIVE ACTION
           CERTIFICATION UNDER 29 U.S.C. § 216(B) SHOULD BE DENIED .......... 14

           A.     Legal Standard ........................................................................................ 14

           B.     Plaintiffs Have Failed to Set Forth a Common Policy that Violated
                 the FLSA ................................................................................................ 17

           C.     Plaintiffs Are Not Similarly Situated To Themselves Much Less
                 Any Putative Collective .......................................................................... 20

            D.     Plaintiffs Are Not Similarly Situated To The Putative Collective ........... 21

    IV.    THE PROPOSED NOTICE CONTAINS NUMEROUS DEFECTS .................. 24

CONCLUSION .................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bai v. Zhuo,*
 No. 13-cv-5790, 2014 WL 5475395 (E.D.N.Y. Oct. 29, 2014) ..............................................15

*Barfleld v. N.Y. City Health & Hosps. Corp.,*
 No. 05 CIV. 6319(JSR), 2005 WL 3098730 (S.D.N.Y. Nov, 18, 2005) ...............................22

*Brown v. Barnes & Noble, Inc.,*
 252 F.Supp.2d 255 (S.D.N.Y. 2017)...................................................................................17

*Costello v. Kohl's Illinois,*
 No. 13-cv-1359 (GHW), 2014 WL 4377931 (S.D.N.Y. Sept. 4, 2013) ...............................18

*Doucoure v. Matlyn Food, Inc.,*
 554 F.Supp.2d 369 (E.D.N.Y. 2008) ..................................................................................14

*Eng-Hatcher v. Sprint Nextel Corp.,*
 No. 07-cv-7350, 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009).............................................20

*Fernandez v. Sharp Management Corp.,*
 No. 16-cv-0551, 2016 WL 5940918 (S.D.N.Y. Oct. 13, 2016)..............................................24

*Glatt v. Fox Searchlight Pictures, Inc.,*
 811 F.3d 528 (2d Cir. 2016)...........................................................................................16, 19

*Gruzelgurgenli v. Prime Time Specials Inc.,*
 883 F.Supp.2d 340 (E.D.N.Y. 2012) ..................................................................................24

*Guillen v. Marshalls of MA, Inc.,*
 750 F.Supp.2d 469 (S.D.N.Y. 2010)...............................................................................18, 23

*Hintergerger v. Catholic Health Sys.,*
 No. 08-380, 2009 WL 3464134 (W.D.N.Y. Oct. 21, 2009) ..................................................24

*Hoffman-La Roche Inc. v. Sperling,*
 493 U.S. 165 (1989)...........................................................................................................14

*Horne v. United Servs. Auto Ass'n.,*
 279 F.Supp.2d 1231 (M.D. Ala. 2003) ...............................................................................19

*Jancich v. Stonegate Mortg. Corp.,*
 No. 11-2602, 2012 WL 380287 (D. Kan. Feb. 6, 2012)........................................................24

*Jenkins v. TJX Cos., Inc.,*
    853 F.Supp.2d 317 (E.D.N.Y. 2012) ...................................................................17

*Ji v. Jling, Inc.,*
    No. 15-cv-4194, 2016 WL 2939154 (E.D.N.Y. May 19, 2016)..........................14

*Korenblum v. Citigroup, Inc.,*
    195 F.Supp.3d 475 (S.D.N.Y. 2016).........................................................1, 15, 16

*Mike v. Safeco Ins. Co. of Am.,*
    274 F.Supp.2d 216 (D. Conn 2003).....................................................................19

*Myers v. Hertz Corp.,*
    624 F.3d 537 (2d Cir. 2010)...........................................................................14, 17

*Naby v. Hudson Grp. (HG) Retail, LLC,*
    310 F.R.D. 119 (S.D.N.Y. 2015) .........................................................................17

*O'Jeda v. Viacom, Inc.,*
    No. 13-cv-5658, 2014 WL 1344604 (S.D.N.Y. Apr. 4, 2014) ...............................24

*Roach v. T.L. Cannon Corp.,*
    No. 10-CV-591, 2011 WL 831446 (N.D.N.Y. Jan. 4, 2011)................................15

*Romero v. H.B. Auto. Grp., Inc.,*
    No. 11 Civ. 386, 2012 WL 1514810 (S.D.N.Y. May 1, 2012).......................15, 21

*Ruiz v. Citibank, N.A.,*
    93 F.supp.3d 279 (S.D.N.Y. 2015) .....................................................................21

*Sand v. Greenberg,*
    No. 08-cv-7840, 2011 WL 1338196 (S.D.N.Y. Mar. 22, 2011)............................24

*Wang v. Empire State Auto Corp.,*
    No. 14-CV-1491, 2015 WL 4603117 (E.D.N.Y. July 29, 2015)...........................14

**Statutes**

29 U.S.C. § 201 *et seq.* ...........................................................................................1

29 U.S.C. § 216 (b) ................................................................................................14

## PRELIMINARY STATEMENT

Plaintiffs Maritza Gaston's and George Gallart's (collectively "Plaintiffs") Motion for Conditional Certification and Court-Authorized Notice (hereinafter the "Motion") should be denied. Plaintiffs seek conditional certification of their claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and request permission to send a court-authorized notice to all individuals nationwide who have worked as Branch Service Managers ("BSMs") at Valley National Bancorp and Valley National Bank (collectively "Defendants" or the "Bank") since February 1, 2014. Because the parties have concluded conditional certification discovery, the threshold for satisfying conditional certification is not as lenient as Plaintiffs suggest. Nevertheless, under either the lenient standard proposed by Plaintiffs, or the more appropriate, higher standard that applies after the conclusion of conditional certification discovery, Plaintiffs fail to satisfy their burden. Therefore, Plaintiffs' Motion should be denied.

In order to prevail on their Motion, Plaintiffs must show that they are "similarly situated" with the individuals they seek to represent, the putative collective. When the parties have engaged in meaningful discovery on the issues bearing on conditional certification – as has occurred at bar – courts utilize a more exacting "modest plus standard" to determine whether the putative collective should be conditionally certified. *See Korenblum v. Citigroup, Inc.,* 195 F.Supp.3d 475, 481 (S.D.N.Y. 2016). To meet this standard, Plaintiffs must put forward evidence susceptible to a common proof that they and putative collective members were victims of a common policy or plan that violated the FLSA. Plaintiffs have not, and cannot, meet this burden. Therefore, their Motion should be denied.

Plaintiffs' allegations are that the Bank uniformly classified BSMs as exempt from the FLSA's overtime requirements, and that their job duties differed from those set forth in the Bank's BSM job description. Even if true, this is insufficient to establish that they, and the

putative collective, were victims of a common plan or policy that violated the FLSA. Indeed, classifying a group of employees as exempt from overtime is not in and of itself a violation of the FLSA. Further, Plaintiffs do not allege that if one were to perform the job duties set forth in the BSM job description, the individual would be misclassified as exempt from overtime. In fact, Plaintiffs appear to concede that, as drafted, the BSM job description details a position exempt from the FLSA's overtime requirements.

Instead, Plaintiffs claim that they did not perform the job duties (or all of the job duties) detailed in the BSM job description. In support of their Motion, Plaintiffs submit declarations from themselves and the one opt-in Plaintiff, Kim Longo. The declarations, which are virtually identical, allegedly describe how their day-to-day activities differed from the BSM job description. However, at deposition, Plaintiffs described their duties differently from how they are detailed in their declarations. In fact, one Plaintiff admitted that the BSM job description accurately detailed her day-to-day job duties as a BSM. The inconsistencies between their declarations and deposition testimony show that Plaintiffs are not similarly situated to themselves, much less other BSMs.

As for the putative collective, Plaintiffs provide no evidence that they are similarly situated. The information put forward by Plaintiffs regarding other BSMs is scant. Plaintiffs do not detail the day-to-day job duties of other BSMs. Moreover, at deposition, the testimony revealed that Plaintiffs have little knowledge about the duties of other BSMs. At best, the evidence submitted by Plaintiffs show that the experiences of BSMs differ from person to person. Thus, Plaintiffs cannot satisfy their burden for conditional certification.

Further, the evidence Plaintiffs submitted demonstrates that this case is not an appropriate one for collective treatment. Courts hold that if adjudicating the representative plaintiff's claims would require individualized analysis and inquiry, a motion for FLSA conditional certification

should be denied.   Here, Plaintiffs' allegations certainly require an individualized analysis. Plaintiffs' assertion that the BSM job description was not accurate with respect to their situation inherently requires individual analysis.   Plaintiffs have submitted anecdotal stories about their individualized experiences.   Yet, their deposition testimony demonstrates that the day-to-day job duties of Plaintiffs differed significantly.   Therefore, to determine liability, the Court will need to analyze the job duties of <u>each and every</u> putative collective member and assess whether those job duties conform to the BSM job description; and then the Court would need to assess whether those individuals were properly classified as exempt from overtime.   By necessity, this requires the Court to review each individual's situation on a case-by-case basis.   Accordingly, an individualized inquiry must be made in order to determine liability.   As such, this case is inappropriate for collective treatment and conditional certification should be denied.

<b><u>RELEVANT BACKGROUND</u></b>

**I.**   **<u>RELEVANT FACTS</u>**

    **A.**   **<u>Valley National Bank and its Branch Service Managers</u>**

Valley National Bank ("VNB") is a subsidiary of Valley National Bancorp.   *See* Declaration of Laura Showers ("Showers Decl.") ¶ 2, which is attached as Exhibit 1 to the Declaration of James Lemonedes, Esq. ("Lemonedes Decl.").   VNB operates over 200 retail bank branches throughout New York, New Jersey, and Florida. *See id.* Each branch is staffed by a Branch Service Manager ("BSM"), a Branch Sales Manager ("Sales Manager"), and approximately five other employees consisting of Tellers, Customer Service Representatives, and/or Sales Associates. *See id.* ¶¶ 3-4, 10; Declaration of Deborah Onderlinde ¶ 2, which is attached as Exhibit 2 to the Lemonedes Decl.   VNB classifies the BSMs and Sales Managers as exempt from the overtime requirements of the FLSA; VNB classifies the remainder of the branch employees as non-exempt.   *See* Showers Decl. ¶ 11.   At each branch, at all times, there are

supposed to be at least three employees present – the BSM and at least two, non-exempt employees. *See id.* ¶ 10.

BSMs manage the day-to-day operations of the branch at which they work. *See id.* ¶ 7; Onderlinde Decl. ¶ 5; Lemonedes Decl., Exhibit 6 (hereinafter "Job Description"). As such, they are responsible for supervising the non-exempt staff at their branch. *See* Showers Decl. ¶¶ 4, 7-9; Onderlinde Decl. ¶¶ 3, 6-7; Job Description. Indeed, VNB trains its BSMs on best practices for supervising and coaching staff and BSMs are evaluated on their ability to properly supervise their staff. *See* Lemonedes Decl., Exhibits 8, 9, and 10 (collectively "Performance Appraisals").

Further, BSMs engage in and/or make recommendations concerning recruiting, interviewing and hiring, disciplining, training, evaluating performance, scheduling, and monitoring employee performance. *See* Showers Decl. ¶ 9; Job Description. In addition, BSMs are responsible for developing and implementing the branch's business plans and strategic initiatives; addressing complaints, inquiries and problems by customers or management; ensuring that the branch is in compliance with Bank policies and legal requirements; coaching and developing subordinates; managing the performance and development of branch employees; and managing branch training, recruiting, and staffing objectives. *See* Showers Decl. ¶ 8; Onderlinde Decl. ¶ 6; Job Description.

BSMs report directly to District Operations Managers ("DOMs"), who work out of VNB's corporate or regional offices. *See* Showers Decl. ¶ 5; Onderlinde Decl. ¶ 4. DOMs only visit their respective branches 1-2 times a month, and thus rely on BSMs to supervise and manage the employees that work at the branch. *See* Showers Decl. ¶¶ 17, 26; Onderlinde Decl. ¶ 13.

In contrast to the BSMs, the Sales Managers do *not* supervise branch employees, do *not* report to DOMs, and do *not* have the same duties as BSMs. *See* Showers Decl. ¶ 4; Onderlinde

Decl. ¶¶ 3. Instead, Sales Managers are focused on the branch's sales and revenue generation. *See id.* As such, they spend the vast majority of their time outside of their branch where they meet with clients and customers to generate leads and sales. *See id.*

1.    Hiring of Non-Exempt Branch Staff

When a branch needs to hire a new employee, the BSM will submit a requisition request, which is sent to the VNB's Human Resources Department ("HR") for approval. *See* Showers Decl. ¶ 12; Onderlinde Decl. ¶ 9. Upon approval, the requisition request will be forwarded to the applicable DOM. *See id.* If the DOM approves the request, a job advertisement for the position will be posted on VNB's website. *See id.*

Applications and/or resumes are first reviewed by HR. *See* Showers Decl. ¶ 13; Onderlinde Decl. ¶ 10. Any applicants that do not have the requisite background or experience for the position are rejected. *See id.* However, all applications meeting the required experience and skills are forwarded to the BSM for review. *See id.* The BSM will then determine whether to interview the candidate. *See* Showers Decl. ¶ 14; Onderlinde Decl. ¶ 11. If the applicant is selected for interview, the BSM will interview the candidate and provide feedback and a recommendation on whether to hire the applicant. *See id.* The recommendations of the BSM are given particular weight as HR and the DOM usually accept the BSM's hiring recommendation. *See id; see also* Showers Decl. ¶ 15. An offer is then extended to the applicant.

2.    Monitoring and Evaluating Employee Performance

BSMs monitor the performance of branch employees and, when they observe violations of Bank policies and protocols or simply poor performance, they recommend discipline. *See* Showers Decl. ¶¶ 17-19; Onderlinde Decl. ¶¶ 13-15; Job Description. Indeed, because DOMs only visit the local branch 1-2 times per month and the Sales Manager is usually offsite, only the

BSM is able to constantly and consistently monitor and observe employee performance. *See* Showers Decl. ¶¶ 4-5, 17-19, 26; Onderlinde Decl. ¶¶ 3, 13-15; Job Description.

If the BSM determines that a staff member has violated Bank policies, he or she will typically recommend to HR and the DOM that the employee be disciplined. *See id.* HR and the DOM review and concur that the recommended discipline is appropriate and within VNB's policies and progressive discipline procedures. *See id.* HR will also review the recommended discipline to confirm that the proposed discipline is not retaliatory or otherwise in violation of applicable law. *See id.* In reviewing the proposed discipline, HR and the DOM rely on the BSM's assessment that the violation occurred. *See id.* If HR believes that the proposed discipline is too severe (or too lenient), HR will advise the BSM to adjust the level of discipline. *See id.*

Every year, BSMs draft performance evaluations for each branch employee. *See* Showers Decl. ¶¶ 24-27; Onderlinde Decl. ¶¶ 16-17; Job Description. A BSM drafts the evaluation based on his or her observations of the employee. *See* Showers Decl. ¶¶ 24-27; Onderlinde Decl. ¶¶ 16-17. The BSM will draft the comments in the evaluation as well as rank an employee's performance on a scale of 1 to 4. *See id.* These rankings have a direct impact on the compensation of staff members; the better the ranking, the higher the wage increase. *See id.* While the evaluations are reviewed and sometimes edited by the DOM and HR, such edits are typically non-substantive. *See id.;* Onderlinde Decl. ¶ 18. Only the BSM has knowledge of a staff member's day-to-day performance. Accordingly, the BSM is the only individual capable of assessing and evaluating the performance of a staff member.

With respect to ranking employee performance, the BSM's determination is rarely modified. *See* Showers Decl. ¶ 27; Onderlinde Decl. ¶ 18. While there are instances when HR or a DOM will note that an overall ranking does not match the BSM's specific category

rankings, *see* Showers Decl. ¶ 27, other than these sort of revisions and/or changes, HR and the DOM rely on the assessment and evaluation of the BSM. *See id.*; Onderlinde Decl. ¶ 18.

3.    <u>Branch Employee Scheduling</u>

BSMs are supposed to create the schedules for branch staff. *See* Showers Decl. ¶ 29; Onderlinde Decl. ¶ 19; Job Description. Further, VNB does not maintain a scheduling database or a share scheduling computer program. *See* Showers Decl. ¶ 30. Generally, DOM and HR do not have any knowledge of a particular staff member's schedule. *See* Showers Decl. ¶ 30; Onderlinde Decl. ¶ 19.

In addition, requests by branch employees for paid time off (e.g., vacations, sick days, personal days) are submitted directly to the BSM. *See* Showers Decl. ¶ 31; Onderlinde Decl. ¶ 20. If additional staff is needed due to an absence, the BSM will coordinate with a different branch to provide an available worker. *See id.* The DOM and HR do not get involved with scheduling issues. *See id.*

**B.    <u>The Experiences of Plaintiffs and Opt-In Plaintiff Differ</u>**

As BSMs, Plaintiffs Gaston and Gallart and Opt-In Plaintiff Longo had vastly different experiences. VNB hired Gaston as a BSM in November 2008 for its Ozone Park, New York branch. *See* Docket No. 33-1, ¶¶ 1-2. Upon hiring, Gaston received approximately one month of training, which included classroom instruction and shadowing a mentor before being assigned to VNB's Ozone Park, New York branch. *See* Docket No. 33-1, ¶ 2; Deposition of Maritza Gaston dated October 16, 2017 ("Gaston Tr."), which is attached as Exhibit 3 to the Lemonedes Decl., at 51:14-54:2. As part of her training, VNB instructed Gaston on leadership, coaching, and people management. *See id.* In January 2013, Gaston transferred to the Rego Park, New York branch, where she worked until November 2014, when she went out on Family & Medical Leave ("FMLA"). *See* Docket No. 33-1, ¶ 2; Gaston Tr. 88:19-89:4. On February 8, 2015, Gaston's

FMLA leave expired and she resigned her position the following day. *See id;* Docket No. 33-1, ¶

1.  As a BSM, Gaston admitted that she reported to a DOM. *See* Docket No. 33-1, ¶ 16; Gaston

Tr.: 47:8-47:13, 49:22-49:24.

Gaston asserted that throughout her employment at VNB, her job duties as a BSM

remained the same. *See* Docket No. 33-1, ¶ 27. She claimed that she regularly supervised,

coached, and evaluated employees of her branch. *See* Gaston Tr: 41:13-42:5, 46:2-46:4, 53:6-

53:9, 63:9-63:14, 65:14-65:17, 68:22-70:7, 93:13-98:25, 104:13-111:16, 135:5-135:8, 138:4-

138:17, 140:17-140:25, 187:23-188:3, 193:25-194:9, 199:17-199:20. She also stated that the

BSM job description accurately detailed her job duties as a VNB BSM:

> Q.   This is a multipage document, it's a 21-page document that is Bates
>      Stamped Def 1, all the way through 21.
>      Please take your time ma'am, let me know when you're ready.
> A.   (Document Review.)
> Q.   So that the record is clear, this document is actually a grouping of several
>      different job descriptions; is that right?
> A.   Yes. Yes.
> Q.   They're all job descriptions for branch service manager; correct?
> A.   No – oh, yes, I'm sorry, yes.
> Q.   Okay. Have you seen them before, or any one of them?
> A.   I've seen a combination.
> Q.   And are the descriptions that are listed – withdrawn.
>      Taking a look at the first three pages, that concerns a position of branch
>      service manager; correct?
> A.   Correct.
> Q.   1, 2 and 3, and it lists the principal responsibilities.
>      Do you see that?
> A.   Yes.
> Q.   **Were those the principal responsibilities that you understood your
>      position to be as a branch service manager for Valley National Bank?**
> A.   **Yes.**
> Q.   **And is that what you did as a branch service manager?**
> A.   **Yes.**

Gaston Tr. 68:22-70:7 (emphasis added). Gaston confirmed that as a BSM, she:

> (1) regularly coached employees to improve their performance;
>
> (2) had regular meeting with branch staff employees to advise them of the Bank
>     policies and procedures;

(3) monitored the branch staff employees to ensure that they complied with branch policies and procedures;

(4) made a recommendation that a head teller at the Ozone Park location, Ms. Heema Harrydal, be promoted to the position of BSM, which she was;

(5) made some recommendations concerning discipline of employees;

(6) interviewed candidates for a position at her branch and made recommendations about which candidates should be hired by VNB

(7) prepared the "Performance Appraisals" for all the branch staff employees;

(8) was evaluated based on her management and supervisory skills (as opposed to the appraisals she prepared for the staff employees); and

(9) received discipline for failing to take full responsibility as a BSM in ensuring the branch operations run smoothly.

*See id.*; Gaston Tr. 41:13-42:5, 46:2-46:4, 53:6-53:9, 57:3-57:20, 63:9-63:14, 65:14-65:17, 67:8-70:7, 74:5-74:7, 75:9-75:21, 77:6-77:11, 79:22-79:24, 80:24-88:8, 91:9-92:6, 93:5-98:25, 104:13-111:16, 113:24-123:22, 127:9-127:17, 129:6-130:21, 135:5-135:8, 138:4-138:17, 140:17-140:25, 144:2-144:16, 146:9-146:19, 149:16-155:6, 157:5-157:10, 165:3-171:23, 177:24-180:11, 187:23-188:3, 193:25-194:9, 199:17-199:20, 209:8-209:22.

Further, Gaston admitted that the only BSMs that she spoke with were those who would be present at the monthly Queens/Brooklyn BSM meetings and she has not spoken to any BSMs in Manhattan, New Jersey, or Florida. *See* Docket No. 33-1 ¶¶ 25-27, Gaston Tr.: 133:7-133:20, 224:18-224:23. In addition, Gaston admitted that she did not know what the other BSMs did unless they told her. Gaston Tr. 229:14-236:17. Indeed, Gaston admitted that she does not have any knowledge concerning whether other BSMs were involved in hiring, firing, disciplining, coaching, evaluating, monitoring, or supervising the staff that worked at their branch; nor does she know if other BSMs made recommendations to DOMs, HR, or other VNB personnel about such issues. *See id.*

In contrast to Gaston, Gallart had a very different experience as a BSM. VNB hired Gallart as a BSM in April 2011. *See* Docket No. 33-2 ¶ 1; Deposition of George Gallart ("Gallart Tr."), dated November 4, 2017, which is attached to Lemonedes Decl. as Exhibit 4, at 56:25-57:2. Upon hiring, Gallart received training, which included classroom instruction and shadowing a mentor before being assigned to VNB's Parsippany, New Jersey, New Road branch. *See* Docket No. 33-2 ¶ 2; Gallart Tr. 59:4-60:15. Unlike Gaston, Gallart claims that the training he received consisted exclusively of learning the teller and customer service roles and how to prepare various reports. *See* Gallart Tr. 67:23-72:10, 75:9-81:5. Indeed, Gallart claimed that he did not receive training on how to be a supervisor. *See id.* Gallart remained the BSM of the Parsippany, New Jersey, New Road branch until July 21, 2015, when he voluntarily left VNB. *See* Docket No. 33-2 ¶ 1; Gallart Tr.: 56:21-56:24, 145:22-145:250. Throughout his employment at VNB, Gallart admitted that he reported to DOM, Deborah Onderlinde, who only visited the Parsippany, New Jersey, New Road branch "maybe once a month". Gallart Tr.: 56:15-20, 91:8-91:24.

Unlike Gaston, Gallart claims that he did not perform many of the job duties set forth in the BSM job descriptions. *See* Gallart Tr. 107:13-131:8. For example, Gallart claimed that he: (i) was not responsible for coaching or developing subordinates at the branch, which was done by the Sales Manager; (ii) did not have the ability to schedule employees; (iii) did not handle customer complaints; and (iv) does not recall managing the development and performance of branch employees as a BSM. *See id.* Yet, he also admitted to coaching and developing subordinates as well as managing the performance and development of branch employees, although this was "hard for [him] to do". *See* Gallart Tr. 66:18-67:4, 88:19-89:6, 92:15-93:10, 95:19-96:11, 158:10-161:81, 182:12-183:3, 185:7-187:11, 198:18-198:24, 199:15-199:19, 205:15-206:22, 208:7-215:20.

Further, Gallart confirmed that he was involved in interviewing applicants for employment, making recommendations about who VNB should hire, supervising employees, drafting employee performance evaluations, and handling scheduling issues.   *See id.* Remarkably, Gallart's LinkedIn profile states that while at VNB he "manage[d] all operational aspects of the branch, . . .train[ed], coach[ed], motivate[ed], and develop[ed] Branch personnel, …[and] assess[ed employee] performance."   *See* Lemonedes Decl., Exhibit 7.   However, at deposition, Gallart claims he was nothing more than a "glorified head teller."   *See* Gallart 63:3-63:8.

Gallart admitted that he rarely spoke with other BSMs and those that he did speak with were located in the same area of New Jersey where he was located.   *See* Gallart Tr. 234:21-237:10, 244:20-251:13.   He has not spoken with any BSMs who were based in New York or Florida. *See id.*

Opt-In Plaintiff Longo's experience also differs significantly from Gaston's and Gallert's experiences.   VNB hired Longo as a BSM in March 2008.   *See* Deposition of Kim Longo ("Long Tr."), dated October 28, 2017, which is attached as Exhibit 5 to the Lemonedes Decl., at 75:20-76:22.   Gaston was assigned to the Bay Ridge, Brooklyn branch, where she worked throughout her employment. *See* Docket No. 33-3 ¶ 2.   VNB terminated Longo's employment on December 19, 2016, after VNB discovered that the branch's vault door was left open. *See id.* at ¶ 1; Longo Tr. 65:11-15.   Longo claimed that she reported directly to her DOM, who "didn't come to the branch" as well as her Sales Manager, differentiating her from Gaston and Gallart. *See* Longo Tr. 77:24-78:5, 79:5-79:11.

While employed as a BSM, Longo had numerous training opportunities and sessions. *See* Longo Tr. 80:11-103:18.   The training programs that Longo recalls attending addressed BSM operations policy and procedures, commercial loans and mortgages, wealth management

and insurance, leadership, people management, and interviews and selection. *See id.* Longo remembered receiving training on compliance, legal, and health/wealth management insurance. *See id.* However, she does not recall attending training addressing leadership or people management. *See id.*

Longo claimed that the BSM job description did not accurately reflect her job duties. *See* Longo Tr. 150:17-156:2. Specifically, she claimed that she "didn't have time to train employees," she did not evaluate employee performance, she did not have the authority to supervise employees, and she did not hire or discipline employees. *See* Longo Tr. 113:12-14, 117:17-117:18, 119:16-119:24, 123:20-124:13, 126:18-126:24, 136:18-138:18, 139:5-139:13, 144:15-144:20, 149:7-150:11, 152:8-159:6. Instead, she claimed that others handled such issues. *See id.* However, she admitted that she drafted employee evaluations in which she rated employee performance; interviewed applicants for open positions; gave her opinion on whether individuals would be a good fit for her branch; prepared schedules; and drafted warning notices. *See* Longo Tr. 130:22-130:24, 136:18-137:19, 174:3-175:6, 178:3-178:6, 179:16-180:11, 181:19-181:25, 185:12-186:5, 188:6-188:21, 198:6-198:13, 200:3-227:22, 233:22-237:2, 240:21-242:11, 249:24-253:9, 255:19-255:25, 270:6-272:18, 294:22-295:2, 297:15-304:25. While she claims that she did not make recommendations for promotions, she admitted that other BSMs did make recommendations about promotions. *See* Longo Tr. 84:2-84:16.

Longo admitted that she only spoke to a couple of other BSM. *See* Longo Tr. 306:8-315:14; Docket No. 33-3 ¶ 25.

## II.   **PROCEDURAL HISTORY**

On April 3, 2017, Plaintiff Gaston filed a putative class and collective action Complaint against Defendants alleging that the Bank had misclassified her and all other BSMs as exempt from overtime under the FLSA and the New York Labor Law. *See* Docket No. 1. On April 10,

2017, Longo filed with the Court a consent to join the action.  *See* Docket No. 8.  On April 26, 2017, Defendants answered the Complaint denying all material allegations.  *See* Docket No. 13.

On May 19, 2017, Magistrate Judge Steven Gold held an Initial Conference Hearing in which he ruled that "[t]he parties would conduct discovery between now and the next conference that is focused on plaintiff's anticipated motion for Section 216(b) certification." Docket No. 24. The parties thereafter engaged in discovery; documents were exchanged, interrogatories were propounded, and depositions were taken.  *See* Lemonedes Decl. ¶ 3.  Further, Plaintiffs noticed the Bank for deposition pursuant to Rule 30(b)(6); however, that deposition was adjourned and to date has not been rescheduled.  *See* Lemonedes Decl. ¶ 4.

On May 30, 2017, Plaintiff Gaston filed an Amended Complaint to: (i) add George Gallart as a plaintiff; and (ii) add claims under New Jersey law.  *See* Docket No. 26.  On June 13, 2017, Defendants answered the Amended Complaint denying all material allegations.  *See* Docket No. 27.  On July 7, 2017, the Court "so ordered" a stipulation among the parties tolling the statute of limitations under the FLSA between June 27, 2017 and July 28, 2017 for putative collective action members.[1]

On August 21, 2017, the Court held another conference.  At that conference, the Court held that "[t]he parties will agree on a schedule date for fully briefing plaintiffs' anticipated Section 216(b) motion by October 30 and completing party depositions by that date." Docket No. 29.  In addition, at that conference, Plaintiffs stated that they did not intend on deposing the Bank prior to filing their Motion.  *See* Lemonedes Decl. ¶ 6.

On September 29, 2017, Plaintiffs filed their Motion.  *See* Docket No. 32.  In support of their Motion, Plaintiffs relied on their pleadings, documents exchanged during discovery, and

---

[1] Prior to the filing of the initial Complaint, The parties agreed to toll the statute of limitations for putative collective action members from September 26, 2016 through April 16, 2017, a total of 202 days.  *See* Docket No. 33 at ¶ 4.

declarations by the Plaintiffs and Longo.  *See* Docket No. 33.  The declarations submitted by Plaintiffs are virtually identical and do not contain any admissible evidence about the experience of any individual other than the declarants.  On October 6, 2017, the Court approved the parties' revised briefing schedule and their request to extend discovery until November 4, 2017.

## **ARGUMENT**

### III. **PLAINTIFF'S MOTION FOR COLLECTIVE ACTION CERTIFICATION UNDER 29 U.S.C. § 216(B) SHOULD BE DENIED**

#### A. **Legal Standard**

Section 216(b) of the FLSA allows "one or more employees" to bring an action "against any employer" on "behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  In "appropriate cases," district courts may certify a collective action, which permits representative plaintiffs to mail notice of the pending lawsuit to "similarly situated" individuals who were subject to the same purported FLSA violations.  *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

Conditional certification is proper where representative plaintiffs demonstrate that they, together with the potential opt-in plaintiffs, were "victims of a common policy or plan that violated the law."  *Doucoure v. Matlyn Food, Inc.*, 554 F.Supp.2d 369, 372 (E.D.N.Y. 2008).  Furthermore, in FLSA exemption cases, the moving party must provide "actual evidence of a factual nexus' between himself and potential opt-in plaintiffs," *Ji v. Jling, Inc.,* No. 15-cv-4194, 2016 WL 2939154, at *3 (E.D.N.Y. May 19, 2016), such that other employees were "classified as exempt pursuant to a common policy or scheme." *Myers v. Hertz Corp.,* 624 F.3d 537, 555 (2d Cir. 2010) (noting that unsupported assertions are insufficient on motion for conditional certification); a*ccord, Wang v. Empire State Auto Corp.*, No. 14-CV-1491, 2015 WL 4603117, at *10 (E.D.N.Y. July 29, 2015) (motion for conditional certification denied where plaintiff

supported with affidavit, but did "not explain the basis of [his] knowledge, identify any employee by name or describe any specific conversations.").

In this Circuit, when a court faces the issue of whether to certify a collective action *before* discovery has commenced, the plaintiffs' burden is modest. *See Romero v. H.B. Auto. Grp., Inc.*, No. 11 Civ. 386, 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012). However, when the parties *have* engaged in meaningful discovery on the issues bearing on conditional certification, the court will apply the more exacting "modest plus standard," which "look[s] beyond the pleadings and affidavits submitted by Plaintiffs" and considers evidence submitted by both parties and obtained during discovery. *Korenblum,* 195 F.Supp.3d at 481 ("[N]either law nor logic supports rigidly applying the same standard for review at all points prior to discovery's close – particularly where…discovery with respect to conditional certification has been completed."); *Bai v. Zhuo*, No. 13-cv-5790, 2014 WL 5475395, *3 (E.D.N.Y. Oct. 29, 2014) (Gold, M.J.) ("While a plaintiff need make only a minimal showing when he seeks to proceed under Section 216(b) before taking discovery, a higher standard is imposed after discovery has been conducted."). The "modest plus" analysis does not permit negative inference "where evidence is lacking," assessment of the merits, or development of issues more appropriately addressed upon motion for decertification. *See Korenblum.* 195 F.Supp.3d at 482 (denying motion for conditional certification using "modest plus standard," because three months of discovery had been conducted specifically on issues regarding conditional certification.). Rather, the heightened standard "take[s] a measured approach" that is "mindful of the potential burdens associated with defending against an FLSA claim involving a large and broadly defined collective group of plaintiffs." *Roach v. T.L. Cannon Corp.,* No. 10-CV-591 (TJM/DEP), 2011 WL 831446, at *6 (N.D.N.Y. Jan. 4, 2011).

Further, the Second Circuit recently addressed conditional certification in *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016).   In *Glatt*, the Second Circuit vacated conditional certification because none of the "common proof" address key issues of liability as the evidence left "most important questions" unable to "be answered with generalized proof." *Id.* at 539-540.   Indeed, under *Glatt*, a district court abuses its discretion by granting conditional certification absent "common proof" answering key liability questions without individualized experiences. *Id.* at 540.   Thus, in order to conditionally certify a case, the Court should apply a meaningful standard that requires actual evidence demonstrating an unlawful policy susceptible to common proof relevant to FLSA liability.

Because Plaintiffs moved for conditional certification after the parties had engaged in extensive discovery, it is appropriate for this Court to use the "modest plus standard" to assess whether conditional certification should be granted.   Indeed, the parties have exchanged thousands of pages of documents, propounded and responded to interrogatories, and taken depositions. *See* Lemonedes Decl. ¶¶ 3-8. Further, the Court set a discovery schedule so that the parties could exchange information concerning whether this case is appropriate to proceed as a collective action under 29 U.S.C. § 216(b). *See* Docket No. 24.   Indeed, Plaintiffs specifically sought and relied on documents produced under this discovery schedule, while electing not to depose the 30(b)(6) witness before submitting their Section 216(b) motion, despite the Court's order to complete party depositions by October 30, 2017. *See* Docket No. 29.   Thus, the heightened standard for certification of an FLSA collective action applies, and, under that heightened standard, it is clear that Plaintiffs cannot satisfy their burden for conditional certification.   In addition, Plaintiffs' Motion should be denied because it is evident that there is no common proof that would enable this Court to determine FLSA liability for the putative collective as a whole.

**B.**    **Plaintiffs Have Failed to Set Forth a Common Policy that Violated the FLSA**

Conditional certification requires a "factual showing that [Plaintiffs] and potential opt-in plaintiffs together were victims of a ***common policy or plan that violated the law***." *Myers*, 624 F.3d at 555 (emphasis added).  Plaintiffs have failed to put forth evidence that they and other BSMs were victims of such a common policy or plan.

Plaintiffs assert that VNB classified all of its BSMs as exempt and that it used a uniform job description for its BSMs, which establishes a common policy that allegedly violated the FLSA.  Even if true, this is insufficient to satisfy Plaintiffs' burden for conditional certification. Indeed, "[d]efendant's classification of [a specific position] as exempt standing alone, is insufficient to satisfy the low threshold for conditional certification." *Brown v. Barnes & Noble, Inc.*, 252 F.Supp.2d 255, 262 (S.D.N.Y. 2017).  "Numerous courts in this Circuit have held that 'mere classification of a group of employees – even a large or nationwide group – as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similar situated' for § 216(b) purposes.'" *Id.* (quoting *Jenkins v. TJX Cos., Inc.*, 853 F.Supp.2d 317, 323 (E.D.N.Y. 2012)).

The fact that VNB used a uniform job description for its BSMs also does not satisfy Plaintiffs' burden that there was a common policy or practice that violated the FLSA. *See Naby v. Hudson Grp. (HG) Retail, LLC*, 310 F.R.D. 119, 124 (S.D.N.Y. 2015) ("The mere fact that Defendants created a uniform job description for this position and that operations managers may perform some of the same tasks at commuter station newsstands nationally is insufficient to create an inference that operations managers are generally misclassified.").  In fact, "if a uniform job description by itself was sufficient every business in corporate America would be subject to automatic certification of a nationwide collective action on the basis of the personal experiences of a single misclassified employee." *Costello v. Kohl's Illinois*, No. 13-cv-1359 (GHW), 2014

WL 4377931, at *4 (S.D.N.Y. Sept. 4, 2013).   Notably, Plaintiffs do not claim that the duties set forth in the BSM job descriptions would render the individuals in such a role as non-exempt. Accordingly, there can be no dispute that if individuals performed the job duties set forth in the description, such individuals would be exempt under the FLSA.

Rather, Plaintiffs must put forth evidence that there was a common policy that violated the FLSA; they have failed to do so.   At best, Plaintiffs submit information that they claim show that *they* did not perform the duties set forth in the BSM job descriptions[2] and therefore *they* were misclassified as exempt from overtime.   However, the information presented does not show that any other BSMs had job duties that were inconsistent with the BSM job description.   Indeed, Plaintiffs admitted that they did not know if other BSMs hired, fired, disciplined, promoted, evaluated, scheduled, or supervised employees, or made recommendations with respect to such issues.   *See* Gaston Tr. 229:14-236:17; Gallart Tr. 234:21-237:10, 244:20-251:13.   Thus, Plaintiffs have not put forward any evidence to demonstrate that the Bank had a common policy or practice that violated the FLSA.   *See Guillen v. Marshalls of MA, Inc.*, 750 F.Supp.2d 469, 476 (S.D.N.Y. 2010) ("[I]t is not sufficient for [Plaintiff] to show that he and the proposed class of [Assistant Sales Managers ("ASMs")] operated under the same job description.   Instead he must show that he and the other ASMs were similarly situated with respect to the claim that they were required to perform non-managerial job duties in contravention of the formal job description.").

Moreover, Plaintiffs' contention that they did not perform the job duties set forth in the BSM job description demonstrate that this case is not appropriate for collective treatment.   To proceed as a collective action "the court must be satisfied that there is a basis to conclude that

_____

[2] However, Gaston admitted that as a BSM she performed all of the duties and responsibilities in the BSM job description notwithstanding the contrary statements in her declaration submitted in support of her Motion.   *See* Gaston Tr. 68:22-70:7.

questions common to a potential group of plaintiffs would predominate a determination of the merits in this case." *Mike v. Safeco Ins. Co. of Am.,* 274 F.Supp.2d 216, 220 (D. Conn 2003). Not only must members of the putative collective present common questions, those common questions must have common answers that are susceptible to collective-wide proof. *See Glatt*, 811 F.3d at 540 (holding that to conditionally certify an action under the FLSA there must be "common proof" capable of addressing liability issues for the proposed collective as a whole). This cannot occur if each opt-in plaintiff must testify about his or her job duties. Absent such a requirement, "it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse." *Horne v. United Servs. Auto Ass'n.*, 279 F.Supp.2d 1231, 1234 (M.D. Ala. 2003).

Nevertheless, this is just what Plaintiffs propose. Their argument is that their job duties differed from those set forth in the BSM job description. Therefore, in order to prove their case (and for Defendants to assert their defenses), the Court will need to review each individual putative collective action member and determine what he or she did on a daily basis. Then the Court would have to assess whether, based on the individual BSM's description of his or her job duties, the individual BSM was misclassified as exempt from overtime. This assessment cannot occur on a representative basis; rather, it would require each putative collective member to testify. This is the essence of an individualized inquiry and demonstrates why, because Plaintiffs have not alleged a common policy or practice that violates the FLSA, this case is inappropriate for collective action treatment.

Accordingly, Plaintiffs' Motion should be denied.

C.      **Plaintiffs Are Not Similarly Situated To**
        **Themselves Much Less Any Putative Collective**

As set forth above, the discrepancies among the experiences of Plaintiffs and Longo demonstrate that Plaintiffs and Longo are not similarly situated to themselves much less any putative collective action member.  Gaston and Gallart claimed that they reported to their DOM. *See* Gaston Tr. 47:8-47:13, 49:22-49:24; Gallart Tr. 56:15-20, 91:8-91:24.  Longo, on the other hand, claimed that she was supervised by her Sales Manager as well as her DOM. *See* Longo Tr. 77:24-78:5, 79:5-79:11.  The fact that BSM not only had different supervisors, but also had supervisors in different roles, in and of itself shows that Longo, Gallart, and Gaston are not similarly situated. *See Eng-Hatcher v. Sprint Nextel Corp.*, No. 07-cv-7350, 2009 WL 7311383, at *3-4 (S.D.N.Y. Nov. 13, 2009) (denying conditional certification because among other things putative class members had different supervisors and therefore the experiences of putative collective members would likely differ).

Notably, according to their own deposition testimony, the job duties and responsibilities of Gaston, Gallart, and Longo differed.  Gaston admitted that the BSM job description accurately detailed her job duties. *See* Gaston Tr. 68:22-70:7.  As such, Gaston admitted that she oversaw her branch's operations, supervised and managed the employees in her branch, regularly coached employees to improve their performance, ensured that branch employees complied with applicable policies and procedure, made adjustments to employees schedules, made recommendations on promoting employees, interviewed applicants for open positions at her branch, made recommendations about which applicants the Bank should hire, made recommendations about disciplining employees, and evaluated employee performance. *See id.;* Job Description.  In contrast, Longo disavowed the BSM job description and claimed that she did not perform the duties and responsibilities set forth in the BSM job description. *See* Longo Tr.

150:17-156:2.  Gallart asserted that he performed some functions in the BSM job description and not others.  *See* Gallart Tr. 107:13-131:8.  In short, Gaston, Gallart, and Longo's deposition testimony demonstrates that each had different job duties when they were BSMs.  As such, they are not similarly situated to one another.  *See Romero*, 2012 WL 1514810, *11 (denying motion for conditional certification because among other things the job duties of plaintiff and putative collective members differed); *cf Ruiz v. Citibank, N.A.,* 93 F.Supp.3d 279, 299-300 (S.D.N.Y. 2015) (decertifying collective action because the experiences of plaintiffs differed from individual to individual).

Accordingly, Plaintiffs' Motion should be denied.

### D.      Plaintiffs Are Not Similarly Situated To The Putative Collective

In addition to **not** being similarly situated to one another, Gaston, Gallart, and Longo have **not** provided any evidence that they are similarly situated to all other BSMs.  Indeed, they provide no information about the day-to-day duties of other BSMs.

In their declarations (which are virtually identical despite the disparity of their deposition testimony), Gaston, Gallart, and Longo assert that "[b]ased on their observations of, and discussions with [other] BSMs, all BSMs performed the same or similar job duties."  *See* Docket Nos. 33-1 ¶ 25, 33-2 ¶ 25, and 33-3 ¶ 25.  However, they do not provide any detail about what the other BSMs allegedly did or how the job duties of the other BSMs differ from the BSM job description.  Furthermore, their deposition testimony show that Plaintiffs did **not** know the extent of the duties performed by other BSMs.  *See* Gaston Tr. 229:14-236:17; Gallart Tr. 234:21-237:10, 244:20-251:13.  For example, at her deposition, Gaston admitted that she does not have any knowledge concerning whether other BSMs were involved in hiring, firing, disciplining, coaching, evaluating, monitoring, or supervising the staff that worked at their branch; nor does she know if other BSMs made recommendations to DOMs, HR, or other VNB personnel about

such issues. *See* Gaston Tr. 229:14-236:17. As such, she cannot establish that she is similarly situated to other BSMs. *See Barfield v. N.Y. City Health & Hosps. Corp.,* No. 05 CIV. 6319(JSR), 2005 WL 3098730, at *1 (S.D.N.Y. Nov., 18, 2005) (denying conditional certification where the plaintiff alleged that, based on "limited anecdotal hearsay," other nurses were not paid overtime).

Likewise, Gallart testified that he had little knowledge about what other BSMs did on a day-to-day basis. *See* Gallart Tr. 234:21-237:10, 244:20-251:13. He admitted that he has never spoken to any BSM other than those in his area of New Jersey (Wayne, Morris, and Sussex), and thus has no knowledge about the duties and responsibilities of BSMs in New York, Florida, or any other part of New Jersey. *See id.* Gallart also admitted that he did **not** have discussions with other BSMs about whether they evaluated employee performance, interviewed applicants for open positions, made recommendations about hiring employees, and employee performance issues, although he could not provide specifics on these issues. *See id.* In fact, Gallart had difficulty explaining what specifically he discussed with other BSMs other than the "long hours". *See id.* Therefore, Gallart cannot prove that he is similarly situated to other BSMs nationwide.

Longo claims to know about what other BSMs did because she "often heard other BSMs discuss what they were doing in their [branches] and how busy they were." Longo Tr. 306:8-15. Yet, she provides no specifics regarding the substance of what the other BSMs did. In fact, she merely claims that the BSMs "worked hard," "had long hours," and were not paid overtime. *See* Docket No. 33-3 ¶¶ 25-29. This does not establish a violation of the FLSA, much less that she is similarly situated to other BSMs who were victims of a policy that violated the FLSA.

Longo also claims that other BSMs performed the same duties as her and that she primarily performed teller and customer service duties. *See id.* ¶¶ 14, 25. However, at deposition, Longo admitted that she drafted employee evaluations in which she rated employee

performance, interviewed applicants for positions at her branch, gave her opinion on whether the interviewees would be a good fit for the branch, recommended employees for promotion, drafted employee-warning notices, and otherwise supervised staff. *See* Longo Tr. 130:22-130:24, 136:18-137:19, 174:3-175:6, 178:3-178:6, 179:16-180:11, 181:19-181:25, 185:12-186:5, 188:6-188:21, 198:6-198:13, 200:3-227:22, 233:22-237:2, 240:21-242:11, 249:24-253:9, 255:19-255:25, 270:6-272:18, 294:22-295:2, 297:15-304:25. Thus, her testimony is contradictory to her declaration and therefore she cannot establish that she is similarly situated to other BSMs.

Accordingly, Plaintiffs have not presented evidence sufficient for the Court to find them similarly situated to other BSMs and therefore their motion for conditional certification should be denied. *See Guillen*, 750 F.Supp.2d at 477 ("Thus, the fact that [Assistant Managers ("ASMs")] were responsible for performing non-exempt tasks in contravention of their written job requirements in nine stores in a particular metropolitan area, out of 820 stores nationwide, provides little basis to believe that Plaintiff is similarly situated to ASMs throughout the country with respect to his claim regarding ASM job responsibilities").

## IV.     THE PROPOSED NOTICE CONTAINS NUMEROUS DEFECTS

Nevertheless, if the Court grants Plaintiff's Motion, the proposed Notice submitted by Plaintiff is defective in several respects and should not be approved as it is currently drafted.[3] However, rather than litigating over the wording of the notice, the Bank suggests that the parties be given a reasonable time to meet and confer over the content of the notice. *See Fernandez v. Sharp Management Corp.*, No. 16-cv-0551, 2016 WL 5940918, at *6 (S.D.N.Y. Oct. 13, 2016) (requiring the parties to "confer and make a good-faith effort to agree to the text of the proposed notice."). If the parties have any disputes regarding the notice after such meet and confer, they should then bring any such dispute to the Court. *See O'Jeda v. Viacom, Inc.,* No. 13-cv-5658, 2014 WL 1344604, at *2 (S.D.N.Y. Apr. 4, 2014) (rejecting plaintiff's proposed notice and directing the parties to submit a revised notice after meeting and conferring in good faith).

---

[3] Among other issues, the notice does not contain language advising putative collective members that they may be required to travel to New York to be deposed and/or for a trial, and that they may be required to pay statutory costs should the Bank prevail. *See Jancich v. Stonegate Mortg. Corp.,* No. 11-2602, 2012 WL 380287, at *3-4 (D. Kan. Feb. 6, 2012) (requiring language that opt-ins may be required to travel to Kansas for depositions and/or trial). To ensure contact information is not used for solicitations other than Court-approved notice, a claims administrator should be appointed and provide the notice rather than Plaintiffs' counsel receiving contact information. *See Sand v. Greenberg,* No. 08-cv-7840, 2011 WL 1338196, at *4 (S.D.N.Y. Mar. 22, 2011) (ordering counsel to solicit bids from third-party claims administrators). Further, Plaintiffs' proposal to mail notices and then send a reminder via email is intrusive; there should be a single notice via U.S. Mail to home addresses because multiple notices suggest judicial endorsement and would pressure individuals to join. *See Gruzelgurgenli v. Prime Time Specials Inc.,* 883 F.Supp.2d 340, 358 (E.D.N.Y. 2012) (denying reminder notice be sent where "[t]he Plaintiffs have not identified any reason why a reminder notice is necessary in this particular case."). If Plaintiffs' counsel is to receive any contact information about putative collective members, providing telephone numbers and email addresses is unwarranted and unnecessary due to privacy concerns and because electronic notices can be easily altered, forwarded to other people, or otherwise egregiously abused. *See Hintergerger v. Catholic Health Sys.,* No. 08-380, 2009 WL 3464134, at *11 (W.D.N.Y. Oct. 21, 2009) (denying request for telephone numbers and email addresses).

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs' Motion for Conditional Certification and Class-Authorized Notice pursuant to 29 U.S.C. §216(b) should be denied in its entirety.

Dated:   New York, New York            FOX ROTHSCHILD LLP
         November 14, 2017

                                       By: _____
                                           James M. Lemonedes, Esq.
                                           Glenn S. Grindlinger, Esq.
                                           Keith A. Reinfeld, Esq.
                                           101 Park Avenue, 17th Floor
                                           New York, New York 10178
                                           Tel: (212) 878-7900
                                           Fax: (212) 692-0940

                                           *Attorneys for Defendants*