# Exhibit A

**THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NEW YORK**

---

MARITZA GASTON and GEORGE
GALLART, on behalf of themselves and all
others similarly situated,

                      Plaintiffs,

      -against-

VALLEY NATIONAL BANCORP and
VALLEY NATIONAL BANK,

                    Defendants.

---

No. 17-cv-1886

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement (the "Agreement") is entered into by and between Maritza Gaston, George Gallart, and Kim Longo ("Lead Plaintiffs"), individually and on behalf of the individuals that they seek to represent (collectively with Lead Plaintiffs, "Plaintiffs") in the matter *Gaston et al. v. Valley National Bancorp*, No. 17 Civ. 1886, and Defendants Valley National Bancorp and Valley National Bank ("Defendants") (together with Plaintiffs, the "Parties").

### RECITALS

**WHEREAS**, the Lead Plaintiffs filed a Collective and Class Action Complaint ("Complaint") asserting claims against Defendants under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the New York Labor Law ("NYLL"), Article 6, §§ 190 *et seq.*, and the New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. § 34:11-56a *et seq.*, for the alleged failure to pay minimum wage and overtime compensation to the Lead Plaintiffs and those similarly situated (the "Litigation");

**WHEREAS**, the purpose of this Agreement is to settle claims asserted in the Litigation relating to the non-payment of minimum wage and overtime to individuals employed by Defendants in the position of salaried Branch Service Managers, salaried Branch Operations Managers, and those salaried employees employed in similar positions by Defendants in the States of Florida, New Jersey, and New York;

**WHEREAS**, Defendants deny all the allegations made by the Lead Plaintiffs in the Litigation and deny that they were liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

1

**WHEREAS**, the Parties agreed in December 2017 to engage in negotiation discussions regarding the possibility of a voluntary resolution of the claims asserted in the Litigation, and exchanged employment and payroll data;

**WHEREAS**, on June 5, 2018, the Parties participated in a mediation session of this matter in New York, New York, which was conducted by experienced mediator Martin Scheinman, followed by a second mediation session on September 5, 2018, which led to an accord resulting in this Agreement; and

**WHEREAS**, Plaintiffs' Counsel analyzed and evaluated the merits of the claims made against Defendants in the Litigation, obtained and reviewed documents relating to Defendants' compensation policies and practices, and analyzed payroll data, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that any recovery would not occur for several years, Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the putative classes and collective.

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions.

## 1.  DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**1.1**   "Acceptance Period" means the 60 days that an Eligible Settlement Collective Member has to negotiate a Settlement Check after it is mailed or subsequently re-mailed as defined in Section 2.8.

**1.2**   "Agreement" or "Settlement Agreement" means this agreement and the exhibits hereto, which the Parties understand and agree set forth all material terms and conditions of the Settlement between them, and which is subject to Court approval.

**1.3**   "Approval Date" means the date of the Court's Order Granting Approval of Settlement, as defined in Section 1.20.

**1.4**   "Branch Manager" means those persons employed by Defendants as salaried Branch Service Managers, salaried Branch Operations Managers, or employees employed in similar positions as salaried employees in such roles, in Florida, New Jersey, or New York.

**1.5**   "Collective Member" means all individuals employed by Defendants in the position of Branch Manager at Defendants' branch bank locations in New York, New Jersey, or Florida during the time period covered by the Agreement.

**1.6**   "Court" means the United States District Court for the Eastern District of New York.

**1.7**   "Defendants" means Valley National Bancorp and Valley National Bank.

**1.8**  "Defendants' Counsel" means Fox Rothschild LLP.

**1.9**  "Effective Date" means the date on which this Agreement becomes effective, which shall mean the later of (a) 35 days following the Court's Order Granting Approval of the Agreement if no appeal is taken of such Order, or (b) the Court's entry of a final order and judgment after any appeals are resolved.

**1.10**  "Eligible Settlement Collective Member" means a Collective Member who is credited with Eligible Work Weeks as defined in Section 1.11.

**1.11**  "Eligible Work Week" means any and all weeks during which a Collective Member was employed by Defendants in the position of Branch Manager during the relevant time period for their respective state, as follows:

**1.11.1**  For Collective Members employed in Florida, the relevant time period shall be the three years prior to the earlier of (a) the date on which the Court grants approval of this settlement; or (b) March 1, 2019;

**1.11.2**  For Collective Members employed in New Jersey, the relevant time period shall be the three years prior to the earlier of (a) the date on which the Court grants approval of this settlement; or (b) March 1, 2019;

**1.11.3**  For Collective Members employed in New York, the relevant time period shall be the six years prior to the earlier of (a) the date on which the Court grants approval of this settlement; or (b) March 1, 2019;

**1.12**  "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment/wage compensation in this Litigation, including FICA, FUTA, and SUTA obligations.

**1.13**  "End of Release Date" means the date that is 60 days after the Approval Order.

**1.14**  "Gross Settlement Amount" means the One Million Five Hundred Thousand Dollars ($1,500,000.00) that Defendants have agreed to pay to fully resolve and settle this Litigation, including any purported damages, interest thereon, and taxes; any Court-approved Settlement Administrator fees; any Court-approved attorneys' fees; Court-approved litigation costs and out of pocket expenses; any Court-approved Service Awards; and any and all amounts to be paid to Plaintiffs, including the employee's share of payroll taxes and the Employer Payroll Taxes. Aside from Defendants' one-half share of the mediator's fees, the Gross Settlement Amount shall be Defendants' only monetary obligation in connection with the Parties' settlement of the Litigation.

**1.15**  "Last Known Address" or "Last Known Addresses" means the most recently recorded personal mailing address for a Collective Member as shown in Defendants' Human Resources records.

3

1.16 "Last Known Telephone Number" or "Last Known Telephone Numbers" means the most recently recorded personal mobile and/or home telephone number for a Collective Member as shown in Defendants' Human Resources records.

1.17 "Litigation" or the "Lawsuit" or the "Action" mean the lawsuit entitled *Gaston et al. v. Valley National Bancorp*, No. 17 Civ. 1886, United States District Court for the Eastern District of New York. "Complaint" means the Complaint dated April 3, 2017 that was filed by Maritza Gaston.

1.18 "Lead Plaintiffs" means Maritza Gaston, George Gallart, and Kim Longo.

1.19 "Net Settlement Fund" means the remainder of the Gross Settlement Amount after deductions, payments, or allocations for: (a) any Court-approved Settlement Administrator's fees and costs; (b) any Court-approved attorneys' fees; (c) any Court-approved litigation costs and out of pocket expenses; and (d) any Court-approved Service Awards to the Lead Plaintiffs.

1.20 "Order Granting Approval of Settlement" or "Approval Order" means an order entered by the Court, which gives final approval to the Settlement and this Agreement, and enters final judgment.

1.21 "Participating Collective Member" means each Eligible Settlement Collective Member, including any Lead Plaintiff, who timely opts into the Litigation by cashing or depositing a Settlement Check.

1.22 "Parties" collectively means the Lead Plaintiffs, the Collective Members, and Defendants.

1.23 "Plaintiffs' Counsel" means Outten & Golden LLP and Shavitz Law Group, P.A.

1.24 "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Administrator from the Gross Settlement Amount paid by Defendants. The QSF will be controlled by the Settlement Administrator subject to the terms of this Agreement and the Court's order(s). Interest, if any, earned on any monies in the QSF will become part of the Net Settlement Fund.

1.25 "Releasees" means Defendants and their respective affiliates, subsidiaries, predecessors, and other related entities, and all of their incumbent and former officers, directors, owners, franchisees, licensees, shareholders, investors, agents, attorneys, employees, fiduciaries, successors, assigns and representatives, in their individual and/or representative capacities.

1.26 "Service Awards" means an amount approved by the Court to be paid to the Lead Plaintiffs as set forth in Section 3.3.

1.27 "Settlement" means the settlement between the Parties embodied and contained in this Agreement.

1.28 "Settlement Administrator" and "Claims Administrator" are used interchangeably and mean Arden Claims Service, subject to Court approval. If the Court does not approve

4

Arden Claims Service as Settlement Administrator, Plaintiffs' Counsel and Defendants' Counsel shall jointly select a substitute Settlement Administrator to administer the notice process and mailing of checks to Plaintiffs and will ask the Court to approve that substitute selection.

1.29    "Settlement Check" means the check issued to each Eligible Settlement Collective Member for their proportionate share of the Net Settlement Fund, which shall be calculated in accordance with this Agreement.

1.30    "Settlement Notice" means the document entitled Notice of Settlement, to be approved by the Court in a form substantially similar to the Notice attached hereto as Exhibit A.

2.    **APPROVAL AND NOTICE TO ELIGIBLE SETTLEMENT COLLECTIVE MEMBERS**

2.1    Binding Agreement.  This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

2.2    Duties of the Settlement Administrator. The Settlement Administrator will be responsible for establishing a QSF account; preparing and mailing the Settlement Notices and reminder postcards to Eligible Settlement Collective Members; preparing and mailing Settlement Checks; distributing approved Service Awards and attorneys' fees and expenses; calculating and paying all appropriate taxes and complying with all applicable tax reporting obligations, including preparing and filing all applicable tax forms; calculating all Settlement Amounts to be paid to Eligible Settlement Collective Members; retaining and providing a copy of Settlement Checks signed and cashed by the Participating Collective Members to Defendants' Counsel and Plaintiffs' Counsel; preparing a declaration describing all duties performed and claims administration statistics; and such other duties mutually agreed upon by Plaintiffs' Counsel and Defendants' Counsel.

2.3    The Parties will have equal access to the Settlement Administrator and all information related to the administration of the Settlement, except that Plaintiffs' Counsel will not have access to the initial Collective List provided to the Settlement Administrator by Defendant pursuant to Section 2.6.  The Settlement Administrator shall provide such information to counsel for either Party upon request.  The Settlement Administrator will provide regular reports to counsel for the Parties regarding the status of the mailing of the Notices to Eligible Settlement Collective Members, the claims administration process, and distribution of the Settlement Checks.

2.4    The Parties agree to cooperate with the Settlement Administrator.  Defendants will provide accurate information, to the extent reasonably available, necessary (i) for the Settlement Administrator to calculate the Settlement Checks in accordance with this Agreement, and (ii) to assist the Settlement Administrator in locating Eligible Settlement Collective Members.  The Parties agree that it is their mutual goal to maximize participation in the settlement.

2.5    Plaintiffs shall file a Motion for Order Approving Settlement and Authorizing Notice of Settlement ("Approval Motion") by no later than January 15, 2019.  Plaintiffs' Counsel

5

will provide Defendants' Counsel with a draft of the Approval Motion and its related documents for review and comment at least 14 days before filing it with the Court. With the Approval Motion, Plaintiffs' Counsel also will file the Settlement Agreement, Proposed Approval Order, and Settlement Notices. Among other things, the Approval Motion will ask the Court to: (a) issue and enter the Proposed Approval Order approving the Settlement as fair, adequate, and reasonable; (b) approve the proposed Settlement Notices to be sent to Eligible Settlement Collective Members and the Settlement Notice distribution process; (c) incorporate the terms of this Settlement; (d) enter Judgment dismissing the case without prejudice, with leave to reinstate on or before 60 days after the first Settlement Notices are sent pursuant to the terms of the Settlement, and deemed with prejudice without further order of the Court if no such motion to reinstate is filed within that time; (e) appoint the Settlement Administrator; and (f) retain jurisdiction to enforce the Agreement.

2.6    On or before sixty (60) days after the Approval Date, Defendants shall give the Settlement Administrator a list, in electronic form, of all Eligible Settlement Collective Members' names, Last Known Addresses, Last Known Telephone Numbers, Social Security Numbers, and their Eligible Work Weeks ("Collective List"). The Collective List will not be shared with Plaintiffs' Counsel. The Settlement Administrator shall provide to Plaintiffs' Counsel the name and address of all Participating Collective Members who have cashed or deposited their settlement check and/or filed a consent to join.

2.7    Settlement Notices and Settlement Checks will be mailed, via First Class United States mail, to Eligible Settlement Collective Members by the Settlement Administrator no later than 30 days after Defendants have funded the Settlement Fund per Section 3.1.

2.8    Settlement Checks issued pursuant to this Agreement shall expire 60 days from when initially mailed or subsequently re-mailed. If a Settlement Check has not been cashed by any Eligible Settlement Collective Member within 30 days after the initial mailing or subsequent re-mailing, the Settlement Administrator will send a reminder postcard to each such Eligible Settlement Collective Member reminding them of the expiration of the Acceptance Period. Eligible Settlement Collective Members who do not cash their checks within 60 days will be issued new checks for cause shown, with a presumption in favor of reissuance.

2.9    The Settlement Administrator shall take all reasonable steps to obtain the correct address for any Eligible Settlement Collective Member for whom the Settlement Notice is returned by the United States Postal Service as undeliverable, including using Social Security Numbers to obtain better address information, and shall attempt re-mailings. Any Settlement Notices or Settlement Check returned as undeliverable shall be traced up to one time to obtain a new address and be re-mailed by First Class United States Mail.

2.10    Plaintiffs' Counsel and Defendants' Counsel have the right to make inquiries and receive information from the Settlement Administrator related to the claims administration process. The Settlement Administrator will have discretion to determine whether direct communications from Eligible Settlement Collective Members should be shared solely with Plaintiffs' Counsel, or with both Parties. The Settlement Administrator will periodically update Plaintiffs' Counsel and Defendant's Counsel by providing statistics

6

regarding the number of returned mailings for which it is unable to obtain corrected addresses, but per Sections 2.3 and 2.6, Plaintiffs' Counsel will not receive such non-responding individual's name or address.

2.11    Retention/Filing of Copies of Settlement Checks.  The Settlement Administrator shall on a weekly basis compile and transmit to Defendants' Counsel and Plaintiffs' Counsel statistics on the number of individuals who have cashed or deposited Settlement Checks. At the end of the Acceptance Period, the Settlement Administrator shall provide copies of all paid Settlement Checks to Plaintiffs' Counsel and Defendants' Counsel.

2.12    In the event that the Court fails to approve this Agreement, the Parties (a) will attempt to renegotiate the Settlement for the purpose of obtaining Court approval of a renegotiated settlement and agreement, and/or (b) seek reconsideration or appellate review of the decision denying approval of the Agreement.  In the event reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement modification is not approved, and the Parties decide to forego further negotiation of a settlement, the Litigation will proceed as if no settlement had been attempted.  In that event, nothing in the Settlement or Agreement may be used by or against any Party under Rule 408 of the Federal Rules of Evidence.

3.    **SETTLEMENT TERMS**

3.1    **Settlement Payments.**

(A)    Defendants agree to fund the Gross Settlement Amount, which shall fully resolve and satisfy in full all amounts due and owing in any regard by Defendants to Eligible Settlement Collective Members with respect to the Litigation including all purported damages, interest thereon, taxes, Court-approved Settlement Administrator fees, Court-approved attorney' fees, Court-approved litigation costs and out of pocket expenses, and Court-approved Service Awards.  Aside from Defendants' one-half share of the mediator's fees, the Gross Settlement Amount shall be Defendants' only monetary obligation in connection with the Parties' settlement of the Litigation.

(B)    On or before sixty (60) days of the Approval Order, Defendants shall deposit the Gross Settlement Amount into the QSF or such other account established by the Settlement Administrator.

(C)    Any portion of the Net Settlement Fund that is unclaimed by Eligible Settlement Collective Members who do not timely cash or deposit their Settlement Check, or that otherwise remains in the QSF under the control of the Settlement Administrator upon final accounting of the settlement funds, shall revert to the Defendants.

(D)    The final accounting described in the preceding paragraph shall occur no later than 120 days after the first Settlement Checks are mailed.

7

**3.2    Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)    In their Approval Motion, Plaintiffs' Counsel shall ask the Court to approve payment of one-third (1/3) of the Gross Settlement Amount as an award of attorneys' fees. In addition, Plaintiffs' Counsel shall seek reimbursement of actual case-related costs and expenses from the Gross Settlement Amount. Defendants shall not oppose this application for attorneys' fees and costs. These amounts shall constitute full satisfaction of any claim for attorneys' fees or costs, and Plaintiffs agree that they shall not seek, nor be entitled to, any additional attorneys' fees or costs under any theory or from any source, incurred in relation to this Litigation other than for any fees and costs related to any efforts to enforce the terms of this Agreement.

(B)    The substance of Plaintiffs' Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement and this Agreement. The outcome of any proceeding related to Plaintiffs' Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion. In the event that the Court (or any appellate court) awards less than the requested fees and costs, only the awarded amounts shall be paid and shall constitute full satisfaction of the obligations of this Section and full payment hereunder. Any money requested for attorneys' fees or costs that are not approved by the Court shall become part of the Net Settlement Fund.

**3.3    Service Awards to Named Plaintiffs.**

(A)    In their Approval Motion, the Lead Plaintiffs will apply to the Court to receive Service Awards of up to $12,500.00 each from the Gross Settlement Amount for the services they rendered to the Collective Members. Defendants will not oppose this request.

(B)    These Service Awards and any requirements for obtaining any such payment are separate and apart from, and in addition to, Lead Plaintiffs' recovery from the Net Settlement Fund. The substance of the Lead Plaintiffs' application for Service Awards is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement and this Agreement. The outcome of the Court's ruling on the application for a Service Award shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion. Any Service Award money not approved by the Court shall become part of the Net Settlement Fund.

**3.4**    Class Counsel will apply to the Court for payment to the Settlement Administrator for their actual costs and expenses, which shall not exceed $35,000.00, from the Settlement Fund. Defendants will not oppose this application.

8

**3.5     Distribution of Payments to Participating Collective Members.**

(A)     The payments from the Gross Settlement Amount to Plaintiffs' Counsel for any Court-approved attorneys' fees and costs will be wired to Plaintiffs' Counsel by the Settlement Administrator within ten (10) business days after the Effective Date.

(B)     The Settlement Checks will be mailed to Eligible Settlement Collective Members by the Settlement Administrator along with the Settlement Notices, in accordance with Section 2.7.

(C)     Service Awards allocated from the Gross Settlement Amount shall be paid to the Lead Plaintiffs from the QSF by the Settlement Administrator ten (10) business days after the Effective Date.

(D)     The allocation to Eligible Settlement Collective Members for their Settlement Checks will be made from the Net Settlement Fund.  The estimated proportionate share of the Net Settlement Fund for each Eligible Settlement Collective Member will be determined by the Settlement Administrator pursuant to the following formula:

(1)     New Jersey Eligible Settlement Collective Members and New York Eligible Settlement Collective Members will each receive 4 points for each full Eligible Work Week and pro rata point(s) for any partial Eligible Work Week during the period of September 5, 2015 through September 5, 2018 in settlement of their FLSA Claims and their state wage and hour claims for such period;

(2)     New York Eligible Settlement Collective Members will each also receive 1 point for each full Eligible Work Week pro rata point(s) for any partial Eligible Work Week during the period of April 3, 2011 through September 4, 2015 in settlement of their state wage and hour claims for such period;

(3)     Florida Eligible Settlement Collective Members will each receive 2 points for each full Eligible Work Week and pro rata point(s) for any partial Eligible Work Week for the period of September 5, 2015 to September 5, 2018 in settlement of their FLSA Claims and their state wage and hour claims for such period.

(4)     To calculate the proportionate share of the Net Settlement Fund for each Eligible Settlement Collective Member, the Settlement Administrator shall:

(a)     Add all points for all Eligible Settlement Collective Members together to obtain the "Denominator";

(b)     Divide the number of points for each Eligible Settlement Collective Member by the Denominator to obtain each Eligible Settlement Collective Member's "Portion of the Net Settlement Fund"; and

9

(c)   Multiply each Eligible Settlement Collective Member's Portion of the Net Settlement Fund by the amount of the Net Settlement Fund to determine each Eligible Settlement Collective Member's Settlement Check Amount.

(E)   Tax Characterization of Payments

(1)   For tax purposes, 50% of the payment to an Eligible Settlement Collective Member pursuant to Section 3.5 shall be treated as back wages and 50% of such payment shall be treated as non-wage income, including interest, any applicable penalties, liquidated damages, and other non-wage monetary relief.

(2)   Payments treated as back wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and Social Security number on an IRS Form W-2.  Payments treated as non-wage income, including interest, any applicable penalties, liquidated damages, and other non-wage monetary relief shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and Social Security Number on an IRS Form 1099.  The Settlement Administrator shall be responsible for determining the appropriate number of exemptions to be used in calculating payroll tax and withholding, deciding the appropriate tax rate, determining how to report payments of attorneys' fees, issuing the Settlement Checks and Service Awards and issuing IRS Forms W-2 and Forms 1099.  Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding, and be reported to the IRS  on an IRS Form 1099.  Payments of Service Awards pursuant to Section 3.3 shall be made without withholding, and be reported to the IRS and to each payee under the payee's name and Social Security Number on an IRS Form 1099.  Plaintiffs' Counsel shall provide an IRS Form W-9 upon request in connection with any attorneys' fees they receive under this Agreement.

(3)   The employee portion of all applicable income taxes will be the sole responsibility of the individual Participating Collective Member receiving a Settlement Check or Service Award.  Defendants make no representations, and it is understood and agreed that Defendants have made no representations, as to the taxability of any portions of the settlement payments to any Participating Collective Members, the payment of any costs or award of attorneys' fees, or any payments to the Lead Plaintiffs.  Neither Plaintiffs' Counsel nor Defendants' Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

4.      **RELEASE OF CLAIMS**

4.1     All Settlement Checks shall contain, on the back of the check, the following limited endorsement:

> **CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:**
>
> I understand that I have up to 60 days from [**DATE OF INITIAL MAILING**] to cash or deposit this check or it will be null and void.
>
> By cashing or depositing this check, I consent to join in the case entitled *Gaston et al. v. Valley National Bancorp*, No. 17 Civ. 1886, pending in the United States District Court for the Eastern District of New York, and agree to be bound by the Settlement Agreement negotiated by Plaintiffs' Counsel in that case.
>
> I hereby release all wage and hour claims that have been brought, or could have been brought based on the operative complaint in *Gaston*, under the FLSA, state law, and the regulations thereunder (other than retaliation claims) from the beginning of my employment with Defendants and their respective affiliates, subsidiaries and/or predecessors through [**THE END OF RELEASE DATE**].

4.2     Any Eligible Settlement Collective Member who does not timely cash or deposit a Settlement Check will not benefit from this Settlement Agreement or be bound by any release of claims herein.

4.3     By signing the Agreement, the Lead Plaintiffs and all Participating Collective Members will release any and all: (i) wage and hour claims against the Releasees that have been brought, or could have been brought based on the allegations in the operative complaint in the Litigation, under the FLSA or the regulations thereunder (other than retaliation claims), from the beginning of their employment with Defendants through the End of Release Date; and (ii) wage and hour claims against the Releasees that have been brought, or could have been brought based on the allegations in the operative complaint in the Litigation, under any applicable state laws and regulations thereunder (other than retaliation claims), from the beginning of their employment with Defendants through the End of Release Date.

5.      **PARTIES' AUTHORITY**

5.1     The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and conditions hereof.

6.      **MUTUAL COOPERATION**

6.1     The Parties agree to reasonably cooperate with each other and to take all commercially reasonable steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement.  The Parties to this Agreement

ACTIVE\81643635.v1-12/12/18

shall use their commercially reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court to effectuate this Agreement and the terms set forth herein.  As soon as practicable after execution of this Agreement, and in accordance with its terms, Plaintiffs' Counsel shall, with the assistance and cooperation of Defendants and their counsel, take all reasonable and necessary steps to secure the Court's approval of this Agreement.

## 7.    NOTICES

7.1    Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, or by nationally recognized overnight courier, addressed as follows:

To Plaintiffs:

> Justin M. Swartz
> Outten & Golden LLP
> 685 Third Avenue, 25th Floor
> New York, NY 10017
> (212) 245-1000
> (646) 509-2057 (facsimile)
> jms@outtengolden.com
>
> Gregg I. Shavitz
> Shavitz Law Group, P.A.
> 951 Yamato Rd
> Suite 285
> Boca Raton, FL 33431
> (561) 447-8888
> (561) 447-8831 (facsimile)
> gshavitz@shavitzlaw.com

To Defendant:

> James Lemonedes
> Glenn S. Grindlinger
> Fox Rothschild LLP
> 101 Park Avenue
> 17th Floor
> New York, NY 10017
> (212) 878-7900
> (212) 692-0940 (facsimile)
> JLemonedes@foxrothschild.com
> ggrindlinger@foxrothschild.com

12

## 8.    NO ADMISSION OF LIABILITY

**8.1**    Defendants deny all of the allegations made by Lead Plaintiffs in the Litigation and deny that they are liable or owe unpaid minimum wages, back wages, overtime wages, interest, penalties or other damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nothing herein will be deemed or used as an admission that a class should be certified. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation.

## 9.    INTERPRETATION AND ENFORCEMENT/MISCELLANEOUS TERMS

**9.1.**    Further Acts. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**9.2.**    No Assignment. The Lead Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action, and any attempt to do so shall be of no force or effect.

**9.3.**    Entire Agreement. This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**9.4.**    Binding Effect. This Agreement shall be binding upon the Parties and, with respect to Defendants, their affiliates, parents, subsidiaries, predecessors, successors, employees and agents; and, with respect to Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**9.5.**    Arms' Length Transaction; Materiality of Terms. The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**9.6.**    Captions. The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**9.7.**    Construction. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

9.8.    Governing Law.  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

9.9.    Continuing Jurisdiction.  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

9.10.   Waivers, etc. to Be in Writing.  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment, with any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement

9.11.   Counterparts.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

9.12.   Electronic, Facsimile, and E-mail Signatures.  Any party may execute this Agreement by signing, including by electronic means, or by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or e-mail to counsel for the other party.  Any signature made and transmitted by facsimile or e-mail for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or e-mail.

9.13.   Signatories.  This Agreement is valid and binding if signed by Defendants' authorized representative and any one of the Lead Plaintiffs.

**WE AGREE TO THESE TERMS.**

DATED:  _12/13/18_            **VALLEY NATIONAL BANCORP**

By:  _____

Ira Robbins

President

14

DATED: 12/13/18          **VALLEY NATIONAL BANK,**

By: _____
        William J. Kamski
        Senior Vice President
_____

DATED: _____       **MARITZA GASTON,**

_____

DATED: _____       **GEORGE GALLART,**

_____

DATED: _____       **KIM LONGO,**

_____

15

DATED: _____         **VALLEY NATIONAL BANK**

                                 By: _____

                                 _____

DATED: __12/14/2018__            **MARITZA GASTON,**

                                 *Maritza Gaston*_____
                                 1F56E14371F443D...

DATED: _____         **GEORGE GALLART,**

                                 _____

DATED: _____         **KIM LONGO,**

                                 _____

DATED: _____     **VALLEY NATIONAL BANK**

By: _____

_____

DATED: _____     **MARITZA GASTON,**

_____

DATED: 12/12/2018     **GEORGE GALLART,**

_____

DATED: _____     **KIM LONGO,**

_____

15

# Exhibit A

## *Gaston v. Valley National Bancorp*

# NOTICE OF COLLECTIVE ACTION SETTLEMENT

**If you were employed as a salaried Branch Service Manager, salaried Branch Operations Manager, or a similar salaried position (collectively, "Branch Managers") by Valley National Bank or Valley National Bancorp and its affiliated and acquired companies (collectively, "Valley") (i) in Florida or New Jersey during the three-year period prior to [Eligibility Date]; or (ii) in New York during the six-year period prior to [Eligibility Date], you are entitled to a payment from a lawsuit settlement.**

**A settlement check payable to you is enclosed.  Read this entire Notice before signing and cashing or depositing the check.**

**A federal Court authorized this Notice – it is not a solicitation from a lawyer.**

- This Notice is directed to any individual who was employed by Valley as a Branch Manager in New Jersey or Florida between [three years prior to Eligibility Date] and [Eligibility Date], or in New York between [six years prior to Eligibility Date] and [Eligibility Date] (the "Eligibility Period").

- The Lead Plaintiffs, Maritza Gaston, George Gallart, and Kim Longo, are former Branch Managers who sued Valley alleging that it misclassified them as exempt from overtime pay and failed to pay them and other Branch Managers overtime pay when they worked more than 40 hours during any given workweek (the "Claims").  The Lead Plaintiffs filed the lawsuit as a collective and class action under the federal Fair Labor Standards Act ("FLSA"), the New Jersey Wage and Hour Law, and the New York Labor Law.

- Valley has denied and continues to deny these allegations, and asserts that Branch Managers were, at all times, paid correctly under the law.  Nevertheless, the Parties have agreed to settle this case to avoid further disputes and litigation with its related risk, expense, and inconvenience.  The Court has not made any ruling on the merits of the claims and no Party has prevailed in this action.  The Court has reviewed and approved the settlement between the Lead Plaintiffs and Valley, and this Notice.

- The settlement funds are being used to provide a settlement of Claims to current and former Valley Branch Managers employed during the Eligibility Period, and to pay attorneys' fees, service awards and related payments, litigation costs, and the expense of administering the settlement.

- Valley will not take any adverse employment action against you based on whether you accept the settlement payment and join the lawsuit or reject the payment.

- Under the allocation formula for the settlement, you are being offered $_____, prior to applicable withholdings as more fully explained below and as reflected in the enclosed settlement check.  This amount is based on the number of weeks you worked as a Branch Manager during the Eligibility Period.

- Neither Plaintiffs' Counsel nor Valley make any representations concerning the tax consequences of your settlement payment.  You are advised to obtain personal tax advice prior to acting in response to this Notice.

- Your decisions have legal consequences for you.  You have a choice to make:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **IF YOU CASH OR DEPOSIT THE CHECK** | By cashing or depositing the enclosed settlement check on or before [**End of Acceptance Period**], you are agreeing to participate in the lawsuit and the settlement, and you are releasing all Claims concerning non-payment or improper payment of overtime and minimum wage compensation (and related claims) that you may have against Valley in the position of Branch Manager from the beginning of your employment with Valley or any of its predecessors and related entities through [**60 days after Approval Order**] |
| **IF YOU DO NOT CASH OR DEPOSIT THE CHECK** | If you do not want to participate in the lawsuit or be bound by the settlement, you should not sign or attempt to cash or deposit your settlement check.  If you do not sign and cash your settlement check on or before [**expiration of Acceptance Period**], your check will be cancelled, you will not join the lawsuit, you will not receive a settlement payment in this case, and you will not release any claims against Valley.  You also will not necessarily be entitled to these funds or any other funds in the future. |

- These rights and options are explained more fully below.

## BASIC INFORMATION

**1.  Why did I receive this Notice and a settlement check?**

Valley's records state that you worked as a Branch Manager for Valley in one or more work weeks from [**three/six years prior to Eligibility Date**] through [**Eligibility Date**].

You are receiving this Notice because you have a right to know about the settlement of a collective action lawsuit that affects your rights.

This Notice explains the lawsuit, the settlement, and your rights and options.

Along with this Notice, you are receiving a settlement check that you may cash or deposit if you agree to join ("opt in" to) this lawsuit and to release all Claims against Valley and its predecessors and related entities from the beginning of your employment through [**60 Days after Approval Order**] for non-payment or improper payment of minimum wage or overtime compensation (and related claims) relating to your employment as a Branch Manager.

The Court supervising this case is the United States District Court for the Eastern District of New York located in Brooklyn, New York.  The lawsuit is known as *Gaston et al v. Valley National Bancorp*, No 17 Civ. 1886.

| 2.  What is this lawsuit about? |
|---|

The lawsuit alleges that Valley misclassified Branch Managers under federal and state wage and hour laws as exempt from the right to receive overtime pay when they worked more than 40 hours in a workweek.

Valley denies these allegations and asserts that Branch Managers were classified correctly as exempt employees under federal and state wage and hour laws and were not entitled to overtime pay.

The Court has not made any ruling on the merits of the claims or defenses, and no Party has prevailed in this action

| 3.  What is a collective action? |
|---|

In a "collective action," one or more individuals called "Named Plaintiffs" sue on behalf of other individuals who may have similar claims.  However, the individuals who have similar claims do not become part of the lawsuit unless they opt in, or agree to join the collective action. You may opt in to this collective action and participate in the settlement of this lawsuit by cashing or depositing the enclosed settlement check.

| 4.  Why is there a settlement? |
|---|

The Court did not decide in favor of the Lead Plaintiffs or Valley and neither Party prevailed in the lawsuit.  Instead, the Parties agreed to a settlement to avoid further disputes and the risk, expense, and inconvenience of litigation.  The Named Plaintiffs and their attorneys believe that this settlement is a good outcome for all individuals who decided to opt-in to the suit.  But you do not have to opt in if you believe the settlement is not in your interests.

## WHO IS IN THE SETTLEMENT

**5.  How do I know if I will be included in the Settlement?**

You are receiving a settlement check because you were employed by Valley as an exempt Branch Manager in Florida, New Jersey, or New York at some time between [**three/six years prior to Eligibility Date**] and [**Eligibility Date**].  If you cash or deposit the settlement check, you will be bound by the settlement and you will be releasing claims for non-payment or improper payment of overtime compensation you may have against Valley in your position of Branch Manager from the beginning of your employment through [**60 Days after Approval Date**].

## THE SETTLEMENT BENEFITS – WHAT YOU GET

**6.  What does the Settlement provide?**

The settlement fully resolves and satisfies any claims for attorneys' fees and costs approved by the Court, all amounts to be paid to individuals who opt in to the suit and settlement, any Court-approved Service Awards to the Lead Plaintiffs, interest, and the Settlement Administrator's fees and costs.  The settlement funds for collective action members are being divided among current and former Branch Managers who worked in Florida, New Jersey or New York during the Eligibility Period based on the number of weeks in which they worked as a Branch Manager during such period.  Settlement checks that are not cashed or deposited on or before [**expiration of Acceptance Period**] will be null and void.

**7.  How much is my payment and how was it calculated?**

Based on the allocation formula that has been approved by the Court, you are receiving a gross settlement payment for $_____, half of which is subject to deductions for applicable taxes and withholding like any other paycheck, and for which you will receive a W-2, and half of which will be reported on IRS Form 1099.  The allocation formula takes into account the number of weeks in which you worked as a Branch Manager during the Eligibility Period.  The Settlement Agreement contains the exact allocation formula.  You may obtain a copy of the Settlement Agreement by following the instructions in Paragraph 12 below.

## HOW YOU GET A PAYMENT

**8.  How do I get my payment?**

A check is enclosed.  All you have to do is sign, and cash or deposit the settlement check.

| **9.  What am I giving up if I opt in and accept the settlement check?** |
|---|

You will not become a member of this collective action unless you cash or deposit your settlement check on or before [**expiration of Acceptance Period**].  If you cash or deposit the settlement check, you will be releasing all claims from the beginning of your employment through [**60 Days after Approval Order**] against Valley and its affiliates, parents, subsidiaries, predecessors, successors, employees and agents asserted in this case under federal or state overtime law, based on the allegations in the complaint, that accrued while you worked for Valley as a Branch Manager, including any claims for non-payment or improper payment of minimum wage or overtime compensation.  This includes claims for liquidated damages, interest, attorneys' fees, costs, and expenses.

## THE LAWYERS REPRESENTING YOU

| **10.  Do I have a lawyer in this case?** |
|---|

The Court has determined that the lawyers at the law firms of Outten & Golden LLP and Shavitz Law Group, P.A. are qualified to represent you and all individuals who opt in to this collective action.  These lawyers are called "Plaintiffs' Counsel."  You will not be charged by these attorneys.  You do not need to retain your own attorney to participate as a member of this collective action.  However, you may consult with any attorney you choose at your own expense before deciding whether to opt in to this case.

| **11.  How will the lawyers be paid?** |
|---|

The Court has approved payment to Plaintiffs' Counsel of one-third of the settlement fund for attorneys' fees.  These fees compensate Plaintiffs' Counsel for investigating the facts, litigating the case and negotiating and finalizing the settlement.  The Court also has approved payment of Plaintiffs' Counsel's out-of-pocket costs.  The costs of the Settlement Administrator are also paid from the settlement fund.

The Court has approved Service Awards and related payments to the Lead Plaintiffs to recognize the risks they took and their services to the collective action.  The Lead Plaintiffs will each receive a payment of $12,500 in addition to their settlement payment under the allocation formula.

## FOR MORE INFORMATION

| 12.  Are there more details about the Settlement? |
| --- |

       This Notice summarizes the proposed settlement.  More details are in the Settlement Agreement.  To the extent there is any inconsistency between this Notice and the Settlement Agreement, the provisions in the Settlement Agreement control.  You may obtain a copy of the Settlement Agreement by sending a request, in writing, to:

[SETTLEMENT ADMINISTRATOR]
Valley Branch Manager Settlement
[ADDRESS LINE ONE]
[ADDRESS LINE TWO]
Facsimile: (XXX) XXX-XXXX
Email: XXX@XXXX.com

| 13.  How do I get more information? |
| --- |

       If you have other questions about the settlement, you can contact the Settlement Administrator, or Plaintiffs' Counsel at the addresses and/or telephone numbers below:

Justin M. Swartz
Michael J. Scimone
Outten & Golden LLP
685 Third Avenue, 25th Floor
New York, NY 10017
(212) 245-1000 or toll-free at (877) XXX-XXXX
ValleyOvertimeSuit@outtengolden.com

Gregg Shavitz
Paolo Meireles
Shavitz Law Group, P.A.
951 Yamato Rd, Suite 285
Boca Raton, FL 33431
(800) 616-4000
info@shavitzlaw.com

DATED:                , 2018